[No. 14873.    Department One. — February 17, 1893.]

FARMERS' AND MERCHANTS' BANK OF LOS ANGELES, RESPONDENT, v. THE BOARD OF EQUALIZATION OF LOS ANGELES, APPELLANT.

WRIT OF REVIEW — ASSESSMENT OF TAXES — STIPULATION AS TO RECORD OF BOARD OF EQUALIZATION — REVIEW OF RECORD. — In a proceeding under a writ of review for the annulling of an order made by a county board of equalization directing the assessor to list and assess to a bank a specified sum of solvent credits which it found had escaped assessment, a stipulation between the petitioner and the board that "the petition and the matters stated therein shall be treated and considered as the certified transcript of the record and proceedings" of the board in the matter of the assessment complained of does not bind the court to regard as transcripts of the record matters stated in the petition which it is manifest were not, and could not have been, in the records of the board. The proper course for the court reviewing the record is to regard only those matters as transcripts of the record which are stated to be such, or are such orders as were required to be entered in the minutes before the board.

ID. — EVIDENCE TAKEN BEFORE BOARD OF EQUALIZATION. — The evidence taken before the board of equalization is not required to be set out in the minutes, and such evidence cannot be regarded as something appar-

ent upon the face of the record because set out in the petition for the writ of review, if not averred to have been set out in the minutes of the board.

ID. — FALSE STATEMENT OF PROPERTY OF BANK — CORRECTING ASSESSMENT — POWER OF BOARD OF EQUALIZATION — ORDERING ASSESSOR TO ADD SOLVENT CREDITS OF STATED VALUE. — An order of the board of equalization of a county finding that a bank had returned a false and incomplete statement of its taxable property, and that it should be assessed in a specified sum for its solvent credits, and ordering the assessor to add to the assessment for solvent credits the sum found to have been omitted, is not an attempt by the board to add other property to the assessment roll, or to exercise assessorial powers; and it is no objection to the order that it states the value of the item to be added, instead of simply directing the assessor to add the property to the list and assess its value. The assessment of solvent credits must necessarily be at their face value, and to describe such property is to fix its value.

ID. — CONSTITUTIONAL LAW — REQUIREMENT OF TAXATION — CONSTITUTIONALITY OF POLITICAL CODE. — Section 3861 of the Political Code, enabling and requiring the assessor, at the request of the board of equalization, to list and assess property which he has failed to assess, simply extends the power and duty of the assessor, and is not in conflict with the provision of the constitution defining the powers and duties of the state and county boards of equalization; but the exercise of the power granted by ·it is directly in accord with section 1 of article XIII. of the constitution, which requires all property not exempt from taxation to be taxed.

ID. — JURISDICTION OF BOARD OF EQUALIZATION — NOTICE TO APPEAR FOR INCREASE OF ASSESSMENT — POWER TO ORDER ADDITIONAL ASSESSMENT. — A notice to a bank to appear before the board of equalization and show cause why its assessment on solvent credits should not be increased from the specified amount assessed to a much larger sum specified in the notice, is, in effect, a notice that other solvent credits might be added to the assessment, and gives the board jurisdiction to order such additional assessment to be made.

ID. — WAIVER OF DEFECT IN NOTICE — APPEARANCE BEFORE BOARD. — Any defect or ambiguity in a notice to appear before the board of equalization is waived by an appearance before the board, and submission to its action, on the part of the person or corporation notified, and furnishing required evidence as to the property involved.

ID. — ORDER OF BOARD OF EQUALIZATION — CONCLUSIVENESS OF RECITAL — EVIDENCE SHOWING FALSE RETURN OF PROPERTY. — The order of the board of equalization reciting that testimony was taken, and, in effect, that the conclusion was reached from the evidence that the bank had returned a false statement, and had escaped assessment for a specified amount of solvent credits, is conclusive, in a proceeding under a writ of review to annul the order, that evidence was introduced before the board showing such facts.

ID. — FUNCTION OF WRIT OF REVIEW — JURISDICTION TO BE TESTED BY FACE OF RECORD. — It is not the proper function of a writ of review to add to or modify the record with reference to jurisdictional facts determined therein, but to test the question of jurisdiction on the facts appearing on the face thereof.

ID. — DETERMINATION OF JURISDICTIONAL FACT. — Where the jurisdiction of a board or inferior tribunal is dependent on a fact which it is required to ascertain and settle by its decision, its decision as to the existence of such fact is conclusive, and cannot be assailed upon writ of review.

ID. — JURISDICTION OF BOARD OF EQUALIZATION, HOW CONFERRED — DETERMINATION OF FACTS WITHIN JURISDICTION. — The *fact* that a bank has property which had escaped assessment is not a jurisdictional fact upon which depends the jurisdiction of the board of equalization to order an additional assessment, but jurisdiction to make such order is conferred on the board by the statute, by the *claim* that the bank has property which had escaped taxation, and by the service of the notice; and the determination of every fact determined by the board in the exercise of such jurisdiction is conclusive, whether such fact be erroneously determined or not.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion.

*C. McFarland,* for Appellant.

*Graves, O'Melveny, & Shankland,* for Respondent.

TEMPLE, C. — This appeal is from a judgment of the superior court of Los Angeles County annulling an order made by the common council of the city of Los Angeles sitting as a board of equalization.

The judgment was rendered in a proceeding under a writ of review, issued upon a petition and the affidavit of John Milner, the cashier of the plaintiff, a corporation doing a general banking business at Los Angeles. No return to the writ was made; but it was stipulated that " the said petition and the matters stated therein shall be treated and considered as the certified transcript of the record and proceedings of the city council sitting as a board of equalization in the matter of the assessment complained of."

This stipulation is not altogether satisfactory. Questions raised upon such a proceeding are to be determined by an inspection of the record, and, in general, not upon pleadings or evidence. It is perfectly manifest that many matters stated in the petition were not, and could not have been, in the records of the board of equaliza-

tion. The only course open to us would seem to be to regard only those matters as transcripts of the record which are stated to be such, or are such orders as were required to be entered in the minutes of the board. For instance, the petition sets forth what petitioner claims was the evidence taken before the board. It is not stated that this evidence is set out in the minutes of the board, and the law did not require it to be done. We are not bound to consider this evidence as something apparent upon the face of the record.

The proceeding before the board was taken for the purpose of ordering the assessor to add certain property to the assessment roll, and an objection is made that the city of Los Angeles has not power to assess, levy, or collect taxes, because the legislature has not granted such authority by a general law, as required by the constitution. This question was decided adversely to respondent in the recent case of *Security Sav. Bank* v. *Hinton,* *ante,* p. 214, and need not be again considered.

The petition shows that petitioner duly made and returned to the city assessor a list of all the personal property which was in its possession or under its control on the first Monday of March, 1891; that all its personal property, except mortgages, at that date subject to assessment for city taxes were, money $21,465.33, vaults and safe $4,000; that the city assessor listed and assessed to petitioner, money on hand $21,465.33, solvent credits unsecured $2,774, vaults and safe $4,000; that the city council, sitting and acting as a board of equalization August 5, 1891, ordered notice to be given petitioner to show cause, August 12, 1891, before the board, why its assessment of solvent credits should not be increased from $2,774 to $275,000. The notice given was in writing, as follows: —

"LOS ANGELES, CAL., Aug. 5, 1891.

"To FARMERS' AND MERCHANTS' BANK, John Milner, Cashier.

"You are hereby notified to appear before the board of equalization of the city of Los Angeles on Wednes-

day, the twelfth day of August, 1891, at ten o'clock, A. M.,
in the council chamber in the city hall, and show cause
why your assessment on solvent credits should not be
increased from $2,774 to $275,000.

"By order of the board of equalization.

"FREEMAN G. TEED,
"City Clerk, and Clerk of said Board,
"By GEO. E. SEIP, Deputy."

That no other notice was given, but petitioner ap-
peared before the board, by the affiant, and submitted
itself to the board, answering such interrogations as
were propounded to it, or to the affiant, touching its
property. What is averred to be the testimony is set out
in the petition, and it is alleged that no other evidence
was taken at such hearing. It is claimed that this testi-
mony does not show or tend to show that the petitioner
had any solvent credits, or any which had escaped assess-
ment. Nevertheless, the board made and entered in its
minutes the following order, which it is claimed the
board had no jurisdiction or power to make: "The Farm-
ers' and Merchants' Bank, having been notified to ap-
pear on August 12th to show cause why its assessment
for solvent credits should not be increased from $2,774
to $275,000, and John Milner, cashier of said bank, hav-
ing appeared in response to said notice, was sworn, and
testified in regards the assets of said bank; and it appear-
ing to the board that said bank has returned a false and
incomplete list of its taxable property, and that said
bank should be assessed for solvent credits to the amount
of $270,774, and that it has escaped assessment for sol-
vent credits to the amount of $268,000, on motion of Mr.
Tufts it is ordered that the assessor be directed to add
to the assessment of said bank for solvent credits the
sum of $268,000, and assess the bank for solvent credits
in the total sum of $270,774." That the assessor did, in
pursuance of the order, enter upon the assessment roll
an addition to the assessment of petitioner the sum of
$268,000, solvent credits, making the total of solvent

credits assessed to petitioner $270,774, instead of $2,774, as listed and returned by the assessor.

1. The first point made upon the record is, that it is apparent therefrom that the proceeding was not to equalize the values of property which had been listed and assessed by the assessor, but was an attempt by the board to add other property to the list which had not been listed or valued by the assessor. This, it is claimed, the board could not do, as it is not vested with assessorial power. But, plainly, the board did not attempt to add property to the assessment roll, or to exercise assessorial powers. It simply directed the assessor to list and assess two hundred and sixty-eight thousand dollars of solvent credits, which it found had escaped assessment. In this case, it is no objection to the order that it states the value of the item to be added, instead of simply directing the assessor to add the property to the list and assess its value. Respondent itself claims that solvent debts, like gold coin, must necessarily be assessed at their face value. To describe the property, therefore, is to fix its value.

The board was authorized to make the order by section 3681 of the Political Code, which the city charter expressly makes applicable. It is claimed that this section of the code is unconstitutional, because the state constitution expressly defines the powers and duties of both the state and county boards of equalization, and the power to cause property to be added to the assessment roll is not there given.

The premise is admitted, but I can see no force or logic in the conclusion. It is not claimed that the power comes from the constitution, but from the act of the legislature. Section 3681 of the Political Code simply extends the power and duty of the assessor, enabling and requiring him, at the request of the board, to list and assess property which he had failed to assess, notwithstanding the time for assessments had passed, and the roll was no longer in his possession. And the exercise of this power is directly in accord with the policy

and express provisions of the constitution, which requires all property not exempt from taxation to be taxed. (Const., art. XIII., sec. 1.) "If any property subject to taxation should escape assessment in any year, the taxation for that year would not be equal and uniform, nor would all property in this state be taxed in proportion to its value, and the behest of the constitution would not be obeyed." (*Biddle* v. *Oaks,* 59 Cal. 94.)

The exercise of this power by the board of equalization does not obstruct the performance, by the board, of any duty enjoined upon it by the constitution, but is in aid of the functions there created; nor does it disturb the division of powers made by the constitution between the state and county boards.

The cases of *Wells, Fargo & Co.* v. *Board of Equalization,* 56 Cal. 194, *People* v. *Sacramento,* 59 Cal. 321, and *People* v. *Dunn,* 59 Cal. 328, have no bearing upon this subject. In those cases the construction of section 9 of article XIII. of the constitution was considered, and the distinct powers and duties of state and county boards to some extent pointed out. Of course, no valid law could be made disturbing this division of power made by the constitution, and perhaps it would follow that functions or powers given to one board are thereby denied to the other. So far the provisions would constitute a limitation upon legislative power. But it constitutes no argument against the power of the legislature to grant other powers, or to impose other duties upon either board, so long as these implied limitations are not violated.

*People* v. *Hastings,* 29 Cal. 449, has no application to the new constitution. One of the chief arguments in favor of constitutional revision was the necessity of getting rid of the provision requiring property to be assessed by assessors elected by the electors of the district in which he exercised his powers. The new constitution contains no such limitation. Besides, as we have seen, the board did not make an assessment, but directed the assessor to do so. The propriety of this

course was recognized under the old constitution, when assessorial powers could not be conferred upon any other officer than an elected assessor. (*People* v. *Reynolds*, 28 Cal. 107.

2. It is next contended that the board had no power to act in the matter, because the notice was insufficient. It is said that it gave no information that it was proposed to add other property to the assessment. The position of respondent upon this matter is not quite consistent. Under another point it contends, and quite properly I think, that to increase the assessment of solvent credits is necessarily to increase the subject of taxation, as was said in regard to money in *People* v. *Dunn*, 59 Cal. 328. That being so, the notice in question could only have meant that other solvent credits might be added.

The listing of property, however, is part of the process of assessing. The assessment roll includes the list with the values added, and the result is often spoken of as the assessment. The assessment may mean the completed tax list. (Cooley on Taxation, 352.)

Besides, it is averred that the petitioner appeared and submitted itself to the action of the board, and furnished all required evidence as to its property. If the notice was ambiguous or imperfect, the defect was waived by such appearance. (*Spring Valley Water Works* v. *Schottler*, 62 Cal. 69; Wade on Notice, 1358.)

3. The next contention is, that the order is void because there was no evidence before the board that any property had escaped assessment. The board had no power to order a new assessment to be made without evidence. (*San Francisco* v. *Flood*, 64 Cal. 504.)

The order recites that testimony was taken, and, in effect, that the conclusion was reached from the evidence that the bank had returned a false list of its property, and had escaped assessment for solvent credits to the amount of two hundred and sixty-eight thousand dollars. This must be held conclusive. "It is not a proper function of the writ of review to add to or modify the

record with reference to jurisdictional facts determined therein, but to test the question of jurisdiction on the facts on the face thereof." (Freeman on Judgments, secs. 263, 619; *In re Grove Street*, 61 Cal. 453; *Ex parte Sternes*, 77 Cal. 156; *De Pedroreña* v. *Superior Court*, 80 Cal. 144.)

In *Hagenmeyer* v. *Mendocino Co.*, 82 Cal. 214, it is said: "The record does not show by affirmative proof that the board did not act upon evidence before it. Therefore its order in the premises is conclusive that it did act upon such evidence as was necessary."

Counsel have cited cases, and no doubt many more could be found from other states, in which the writ of review has been used for the correction of errors. Our code provides: "The review upon this writ cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer." (Code Civ. Proc., sec. 1074.) It has been held that this language is equivalent to the phrase in section 1068 authorizing the court to inquire whether the tribunal, board, or officer has exceeded the jurisdiction of such tribunal, board, or officer. (*Central Pac. R. R. Co.* v. *Placer Co.*, 43 Cal. 365.)

But where the writ is understood as affording a remedy for mere errors, it has been held that the question must be determined by an inspection of the record, unless the statute has provided for a bill of exceptions.

In *Birdsall* v. *Phillips*, 17 Wend. 464, the common-law rule was elaborately considered by Judge Cowen. After citing numerous cases, he says: "From these authorities and others, I collect the following general rule: Wherever, were the suit at common law, the matter alleged for error is of such a nature that a bill of exceptions would be essential to its review by writ of error, a *certiorari* will not reach it, unless some statute has enlarged the effect of that writ in the particular case."

It is true, the petition sets out certain evidence alleged to have been submitted to the board, and avers that no

other evidence was taken.   This can certainly have no
greater effect than an offer to impeach the record by
evidence *dehors*.   It is not stated that the record of the
proceedings of the board discloses the evidence,— though
if it did, I cannot see how that would help the matter.
The board had jurisdiction to inquire as to whether
any property of petitioner had escaped assessment.   If
I am right on the other points disposed of, it had juris-
diction, both as to the subject-matter and the person.
This being granted, its procedure within its jurisdic-
tion is no more open to question than it would be were
it a court of general jurisdiction.   Certainly, it was its
province to decide as to the effect of the testimony, and
that includes the necessity of determining whether it
tended to show, and did show, that property belonging
to petitioner had escaped assessment.   All its acts after
having acquired jurisdiction constituted the exercise
of such jurisdiction,— none the less that such acts were
erroneous.

*Central Pac. R. R. Co.* v. *Placer Co.*, 43 Cal. 365, is simi-
lar to this.   It was a proceeding before a board of equaliza-
tion to have an assessment reduced.   It was claimed that
the board acted upon illegal testimony.   It is said that
the board acted within its jurisdiction, and its rulings
could not be reviewed.

*Barber* v. *San Francisco*, 42 Cal. 630, is a similar case.
It was a writ to review the action of the board of super-
visors in regard to a street assessment.   It was claimed
that the evidence did not justify the conclusion of the
board.   The court said: "The board therefore had ju-
risdiction to entertain, hear, and determine the appeal
upon the proofs introduced; and if it committed an
error in its conclusions as to the facts, the error would
not affect their jurisdiction, and could not be reviewed
on *certiorari*.   The return of the board to the writ pur-
ports to contain the evidence given on the hearing of
the appeal, but there is nothing in the record to show
what facts the board considered proved, and if there
was, and if we should be of the opinion that the board

found the facts contrary to the evidence, we could not correct the error in this form of proceeding." (See also *People* v. *Dwinelle*, 29 Cal. 632.)

. But if it can be claimed that the fact as to whether the petitioner had property which had escaped assessment was in any sense jurisdictional, it was nevertheless a fact, as to the existence of which the board was authorized and required to determine in that proceeding. It is said by Wells on Jurisdiction, sec. 62: "Where the jurisdiction of even an inferior court is dependent on a fact which that court is required to ascertain and settle by its decision, such decision is held conclusive."

In *Evansville* v. *Railroad Co.*, 15 Ind. 395, the same doctrine is declared, and numerous authorities cited to the same effect.

*Brittain* v. *Kinnaird*, 1 Brod. & B. 432, was trespass for taking a vessel by magistrates. The owner had been convicted under a statute called the Bumboat Act. Evidence was offered to show that the conviction was void, as the court had no jurisdiction, as the vessel was not a boat within the meaning of the act. Chief Justice Dallas considered the case at great length, and concludes that, conceding that the fact were jurisdictional, still it was a fact the court had jurisdiction to determine, and such determination was conclusive.

I do not think, however, the fact was jurisdictional. Jurisdiction was conferred by the statute, the claim that the petitioner had property which had escaped assessment and the service of the notice. If the board had determined that the evidence did not tend to prove the existence of property which had escaped taxation, it would not be doubted that such determination was an act within its jurisdiction. A contrary conclusion must be equally an act within its power. Jurisdiction to determine an issue involves the power to determine it erroneously. Jurisdiction to determine the effect of evidence involves the power to draw erroneous conclusions from it.

I think the judgment should be reversed, and the court below directed to sustain the demurrer.

Haynes, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion, the judgment is reversed, and the court below is directed to sustain the demurrer.

PATERSON, J., HARRISON, J., GAROUTTE, J.

Hearing in Bank denied.